IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

MICHAEL CONNOR, an individual,

Plaintiff, Civil Action

v.

FERRIS MARKETING, INC., a Delaware corporation, PC GEAR HEAD, LLC, a Florida limited liability company, RONALD M. FERRIS, JR., an individual, and DANIEL A. SHEA, an individual,

CASE NO.: ___________________________

Defendants.

_____________________________________/

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

Plaintiff MICHAEL CONNOR, through undersigned counsel, sues defendants FERRIS MARKETING, INC., PC GEAR HEAD, LLC, RONALD M. FERRIS, JR., and DANIEL A. SHEA, and states:

1. This is a civil action under the Florida's Revised Limited Liability Company Act (the "LLC Act"), codified at §§ 605.0101 Fla Stat. et seq., the U.S. Copyright Act (the "Copyright Act"), codified at 17 U.S.C. §§ 101, et seq., and other Florida causes of action.

**I. PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff Michael Connor is a citizen of the State of South Carolina and is otherwise *sui juris*.

3. Defendant Ferris Marketing, Inc. ("FMI") is a Delaware corporation with its principal place of business in Collier County, Florida.

4. Defendant PC Gear Head, LLC ("PC Gear Head") is a Florida limited liability company whose sole members are Plaintiff and FMI and is thus a citizen of South Carolina, Delaware, and Florida.

5. Defendant Ronald M. Ferris, Jr. ("Ferris") is a citizen of the State of Florida and is



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

otherwise *sui juris.*

6. Defendant Daniel A. Shea ("Shea") is a citizen of the State of Massachusetts and is otherwise *sui juris*.

7. This Court has subject matter jurisdiction over Plaintiff's claim under the Copyright Act pursuant to 28 USC § 1331 as the Copyright Act is law of the United States.

8. This Court has subject matter jurisdiction over Plaintiff's state law claims pursuant to:

(a). 28 USC § 1332 as the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between Plaintiff and defendants FMI, Ferris, and Shea; and

(b). 28 USC § 1367 as Plaintiff's state and federal claims derive from a common nucleus of operative facts and involve the same parties.

9. This Court has general personal jurisdiction over all defendants pursuant to § 49.193(2), Fla. Stat., as they all are engaged in substantial and not isolated activity within this state because: (i) FMI is a Florida citizen through is principal place of business; (ii) PC Gear Head is a Florida citizen through its member FMI; (iii) Ferris is a citizen of Florida; and (iv) Ferris and Shea are FMI's and PC Gear Head's respective chief executive and chief finance officers; and Shea as FMI and PC Gear Head's chief finance officer has frequent travel and communications to Florida.

10. This Court can properly exercise specific personal jurisdiction over Shea pursuant to § 48.193(1), Fla. Stat., because, as more fully elaborated below, Shea: (i) operated, conducted, engaged in, or carried on a business or business venture in Florida; and (ii) committed tortious acts within Florida for his own personal benefit.

11. This Court's exercise of specific personal jurisdiction over all defendants would not violate the Federal Constitution's due process requirements because all defendants have



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

established minimum contacts with Florida either through their continuous presence in Florida or through their tortious conduct for their own pecuniary gain while in, or directed to, Florida.

12. Venue is proper in the Middle District of Florida pursuant to 28 USC § 1391(b)(2) because it is a judicial district where: (i) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred; (ii) all of the defendants reside or frequently travel; and (iii) is the most convenient forum for all the parties to litigate this case.

## II. GENERAL ALLEGATIONS

13. Ferris and Shea are FMI's sole shareholders.

14. Ferris and Shea are FMI's respective chief executive and chief finance officers.

15. On information and belief, Ferris and Shea, either directly or through a controlling interest in FMI or some other entity, own a controlling interest in the following business entities:

(a). Defendant PC Gear Head;

(b). Night Owl SP, LLC ("Night Owl"), a Florida limited liability company;

(c). Radio Road Toys, LLC ("Radio Road"), a Florida limited liability company;

(d). Beechmont, Inc. ("Beechmont"), a Massachusetts corporation; and

(e). Worldwide Marketing Ltd. ("WMI"), a company incorporated in Hong Kong, China SAR.[1]

16. On or about June 2006, FMI was a going concern whose only customer was CompUSA, to whom it sold a variety of computer related products.

17. On or about April 2006, Plaintiff and Ferris originally formed PC Gear Head as a Massachusetts limited liability company under the name Gear Head, LLC, for the purpose of

[1] "SAR" stands for "Special Administrative Region" which is how the Chinese government designates the island of Hong Kong.



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

designing, marketing, and selling computer peripherals and accessories.[2]

18. Plaintiff and FMI did not execute a formal operating agreement for PC Gear Head.

19. Instead, Plaintiff and Ferris informally agreed on PC Gear Head's organic rules, which together constitute PC Gear Head's implied operating agreement as defined by the LLC Act at § 605.0102(45).

20. PC Gear Head's implied operating agreement provided as follows:

(a). Plaintiff and FMI would be PC Gear Head's sole members;

(b). FMI would fund PC Gear Head's start-up costs and other deficit funding, in exchange for which FMI would hold an 85% membership interest in PC Gear Head;

(c). Plaintiff would hold an undiluted membership interest in the remaining 15% of PC Gear Head;

(d). PC Gear Head's net profits would be distributed commensurately with each member's percentage interest;

(e). PC Gear Head would hold zero or near zero retained earnings, so PC Gear Head's members would receive annual distributions from PC Gear Head's net profits commensurate with their percentage membership interest;

(f). Plaintiff would not be required to provide capital contributions to or guaranty any loans to PC Gear Head, FMI, or any of Ferris's other businesses;

(g). PC Gear Head would be a manager managed LLC with Plaintiff and Ferris as managers;

(h). Ferris would serve as PC Gear Head's President.

(i). Shea would serve as PC Gear Head's chief financial officer ("CFO");

---

[2] Hereinafter, "PC Gear Head" will collectively refer to Gear Head, LLC and PC Gear Head, LLC.

(j). PC Gear Head's finances would be administered by Beechmont under Shea's guidance;

(k). all of PC Gear Head's products would be sourced from WMI, a Hong Kong-based sourcing company owned by Ferris;

(l). PC Gear Head would pay WMI a 7% commission on all products purchased through WMI;

(m). Plaintiff would serve as PC Gear Head's vice-president of sales and marketing;

(n). Plaintiff would also design Gear Head's packaging, products, logos, and other visual artwork to be used in Gear Head's products, marketing materials, and trademarks because FMI lacked expertise in input devices and packaging;

(o). Plaintiff would be entitled to a quarterly advance on his draw of $12,500.00 which would be deducted from his year-end annual membership distributions;

(p). In addition to, and apart from, his annual distributions, Plaintiff would get annual guaranteed payments of $150 thousand, grossed up to include Plaintiff's social security and Medicare taxes which Plaintiff was solely responsible for paying to the IRS.

21. Ferris and Shea have at all times exercised near complete control over PC Gear Head's finances and operations because:

(a). Ferris has at all times been PC Gear Head's manager and chief executive officer ;

(b). Ferris and Shea are sole shareholders of FMI, through which they controlled FMI's 85% membership interest in PC Gear Head;

(c). Ferris and Shea have at all times been in exclusive control of PC Gear Head's finances through their controlling interest in Beechmont;

(d). Ferris has at all times been in exclusive control of PC Gear Head's inventory



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

sourcing operations through his controlling interest in WMI, through which PC Gear Head sources all its products.

22. Thanks in large part to Plaintiff's sales and marketing efforts, PC Gear Head becomes profitable by the end of 2009, and generates $12.75 million in sales revenue, approximately $600 thousand in overhead expenses, and net revenues of $1.4 million.

23. PC Gear Head has remained profitable every year since 2009, with profits ranging from over $3 million in 2012, $2.19 million in 2013, $2.64 million in 2014, and $926 thousand in 2015.

24. In the meantime, by about 2008 or 2009, FMI had lost CompUSA as its only customer, effectively reducing FMI's revenue to zero.

25. As a result, PC Gear Head becomes Ferris's and Shea's only profitable business.

26. Once PC Gear Head became profitable, Ferris and Shea exploited their complete control of PC Gear Head's finances and their 85% ownership interest in PC Gear Head to oppress Plaintiff as PC Gear Head's minority owner.

27. For example, on or about May 2009, Ferris and Shea coerced Plaintiff to consent to PC Gear Head acting as security for a $3 million loan from a bank to FMI that would solely benefit FMI, along with Ferris and Shea as FMI's sole shareholders.

28. The consent required that PC Gear Head encumber all of its assets, inventory, and increase retained earnings, including Plaintiff's share of the profits.

29. Ferris also gives himself sole authority to approve the terms of the security agreement, and sole authority to decide on how the loan's proceeds would be applied.

30. The security agreement caused a reduction in PC Gear Head's distributions to Plaintiff by requiring that PC Gear Head increase retained earnings as security for the loans.

31. All of the proceeds from the $3 million loan were used solely for FMI's financial benefit and that of Ferris and Shea as FMI's sole shareholders.

32. By the end of 2009, all of Ferris's others U.S. companies were unprofitable, including Night Owl.

33. Then, after FMI lost CompUSA as a customer, Ferris and Shea told Plaintiff they wanted to combine PC Gear Head's and FMI's finances.

34. Ferris and Shea wanted to combine PC Gear Head's and FMI's finances so Ferris and Shea could then divert PC Gear Head's profits to FMI and bolster FMI's weak financial condition.

35. Ferris and Shea offered Connor 20% of PC Gear Head in 2009 if he agreed to combine FMI and PC Gear Head's finances.

36. Plaintiff declined their offer and told them he preferred to keep PC Gear Head and FMI as separate entities.

37. Regardless, Ferris and Shea ignored Plaintiff and joined PC Gear Head's and FMI's finances anyway without Plaintiff's knowledge or consent.

38. After combining FMI's and PC Gear Head's finances, Ferris and Shea redirected PC Gear Head's profits to fund FMI's losses.

39. Ferris's and Shea's redirection of PC Gear Head's profits to FMI caused PC Gear Head's expenses to almost double without a commensurate increase in revenues, which severely cut into PC Gear Head's profitability.

40. Neither Ferris nor Shea told Plaintiff that joining PC Gear Head's and FMI's finances would cause PC Gear Head's expenses to increase and reduce PC Gear Head's profitability.

41. Moreover, Plaintiff was the only one of PC Gear Head's members to be affected by



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

the cut in PC Gear Head's profits, because all the profits Ferris and Shea diverted from PC Gear Head were paid to FMI, who was PC Gear Head's only other member.

42. Plaintiff was given no additional consideration or equity after Ferris and Shea unilaterally decided to combine PC Gear Head and FMI's finances.

43. FMI, on the other hand, was a direct beneficiary of Plaintiff's loss.

44. As a result, Plaintiff was the only PC Gear Head member affected by the loss.

45. FMI's use of Plaintiff's share of PC Gear Head's profits to fund its own and Ferris's other money-losing businesses was without Plaintiff's knowledge or consent.

46. In addition, unbeknownst to Ferris or Shea at the time, WMI's employees in Hong Kong were taking kick-backs from WMI's vendors, which had an adverse impact on PC Gear Head's $10 million a year in purchases, all of which went through WMI.

47. Ferris and Shea disguised FMI's use of PC Gear Head's profits by misleadingly accounting for it as overhead expense payments to FMI/Beechmont, even though the added expenses were not tied to PC Gear Head's operations.

48. FMI's use of PC Gear Head's profits caused PC Gear Head's overhead to increase initially by 50%, then incrementally to 100% then 250% without a comparable increase in either PC Gear Head's profits or percentage ownership interest to Plaintiff.

49. Once the dramatic and unexplained increase in PC Gear Head's overhead became apparent, Plaintiff made multiple requests to Ferris and Shea for an accounting that would explain the increase in PC Gear Head's overhead without a comparable increase in revenues.

50. Neither Ferris nor Shea ever honored Plaintiff's multiple requests for an accounting.

51. On or about July 2010, Ferris and Shea, by means of threats and minority shareholder oppression, again forced Plaintiff to consent to PC Gear Head encumbering all of its assets as



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

security for another loan to FMI, this time for $10 million.

52. Ferris again gives himself sole authority to approve the terms of the security agreement, and sole authority to decide on the use of the loan's proceeds.

53. All of the proceeds from the $10 million loan were directed to FMI and were used solely for FMI's benefit, and that of Ferris and Shea as FMI's sole shareholders.

54. These funds were used to finance, among other things, Night Owl inventory purchases and Radio Road inventory purchases as these fledgling companies could not get credit approval on their own.

55. Like the earlier $3 million loan to FMI, this new loan forced an increase in PC Gear Head's retained earnings.

56. On or about June 2011, Ferris and Shea again forced Plaintiff to consent to PC Gear Head acting as FMI's unconditional guarantor so that FMI may enter into yet another loan, this time as a credit agreement for more funds.

57. And again, the consent gives Ferris sole authority to approve the terms of the credit agreement.

58. None of the proceeds from the credit agreement PC Gear Head guaranteed were used to benefit PC Gear Head.

59. All of the proceeds from the credit agreement were used to benefit FMI, and Ferris and Shea as FMI's sole shareholders, as well as Ferris's other businesses, such as Night Owl, and Radio Road.

60. Part of the proceeds from the credit agreement were also used to fund Ferris businesses that were completely unrelated to PC Gear Head.

61. For example, Ferris used the proceeds from the credit agreement to fund a real estate



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

venture in Florida called Sandy Real Estate Holdings, LLC ("Sandy") that was owned by Ferris and Ferris's wife.

62. All of the above-described transactions were for Ferris's and Shea's sole and exclusive personal financial gain as FMI's sole shareholders and at Plaintiff's sole expense.

63. Plaintiff was the only one of PC Gear Head's members to suffer from FMI's, Ferris's, and Shea's diversion of FMI's profits.

64. All the above-described transactions were detrimental solely to Plaintiff in that they caused a dramatic reduction in Plaintiff's income from PC Gear Head's operations.

65. All the above-described transactions were completely lacking in any consideration to Plaintiff, either as an increased ownership interest in PC Gear Head, or an ownership interest in FMI or Ferris's other companies.

66. Finally, all of the above transactions contravened the LLC Act at § 605.04092, because the LLC Act expressly provides that an interested transaction has to be approved by two or more disinterested managers, and Plaintiff was the one and only disinterested manager.

67. All conditions precedent to the filing of this lawsuit have occurred, been performed, or been waived.

68. Plaintiff has retained the services of Gutierrez Bergman Boulris, PLLC and has agreed to pay it reasonable attorney's fees.

69. Plaintiff will seek to recover its attorney's fees and costs as permitted by any contract, applicable statute, rule of civil procedure, or other similar basis.

**Count I - Breach of fiduciary duty against Ferris as PC Gear Head's Manager**

70. Plaintiff incorporates ¶¶ 1-69 as if fully restated herein.

71. The LLC Act at section § 605.04091 provides that Ferris as manager of PC Gear Head owes a fiduciary duty to Plaintiff as member of PC Gear Head.

72. Ferris's fiduciary duty as PC Gear Head's manager requires that Ferris:

(a). give an accounting to Plaintiff;

(b). hold as trustee for Plaintiff any property, profit, or benefit Ferris derived in the conduct of PC Gear Head's affairs or from Ferris's use of PC Gear Head's property; and

(c). refrain from dealing with PC Gear Head as, or on behalf of, a person having an interest adverse to PC Gear Head while conducting PC Gear Head's activities and affairs.

73. At all times, Ferris stood on both sides of all the above-described transactions,

(a). on one side as PC Gear Head's manager, who facilitated and approved the diversion of PC Gear Head's profits and loan proceeds to FMI; and

(b). on the other side as FMI's majority shareholder, who combined PC Gear Head's and FMI's finances over Plaintiff's objections so that it would receive and benefit from the very same profits and loan proceeds Ferris was directing away from PC Gear Head.

74. At all times, Ferris knew that entering into all of the above-described transactions would be detrimental solely to Plaintiff, while he would benefit personally from those same transactions through his majority shares in FMI.

75. Ferris breached his fiduciary duty to Plaintiff when he caused PC Gear Head to enter into multiple transactions for his personal gain, and knowing that those transactions would cause Plaintiff to lose from his share of PC Gear Head's profits.

76. The LLC Act also imposes on Ferris a duty to act in good faith and with fair dealing so as to protect Plaintiff's reasonable expectations as Ferris discharges his obligations as PC Gear Head's manager.

77. Ferris breached his fiduciary duty and his duty of good faith and fair dealing to Plaintiff when he caused PC Gear Head to enter into multiple transactions as described above, all



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

of which benefited only FMI, Ferris, and Shea, without Plaintiff's consent, at Plaintiff's sole expense, and without providing an accounting to Plaintiff.

78. Ferris's breach of his duties have caused Plaintiff damages in the form of:

(a). lost profits from PC Gear Head which should have been distributed to Plaintiff, but that instead Ferris used to benefit solely FMI, Ferris, and Shea, while knowing that such use was opposed by Plaintiff and would be detrimental solely to Plaintiff; and

(b). lack of consideration to Plaintiff for consenting to use all of PC Gear Head's assets as security for numerous loans in the millions of dollars for FMI's, Ferris's, and Shea's sole and exclusive benefit.

79. The LLC Act at § 605.04093 provides that Ferris, as PC Gear Head's manager, is personally liable for monetary damages to Plaintiff for any statement, vote, decision, or failure to act that results in a breach of his fiduciary duties by entering into a transaction from which Ferris derived an improper direct or indirect personal benefit.

80. Ferris, as PC Gear Head's manager, derived an improper personal benefit under the LLC Act when he directed PC Gear Head to enter into a transaction with FMI, while FMI had a material financial interest in the transaction, and while Ferris owned and controlled FMI.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter judgment finding defendant RONALD M. FERRIS, JR. liable for breach of fiduciary duty pursuant to § 605.04091 of Florida's Revised Limited Liability Company Act, award Plaintiff damages along with interest thereon, and grant such other relief as the Court deems just and proper.

## Count II - Breach of Common law fiduciary duty against Ferris and Shea as PC Gear Head's Senior Executive Officers

81. Plaintiff incorporates ¶¶ 1-69 as if fully restated herein.

82. At all times, Ferris and Shea were PC Gear Head's respective President and CFO and



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

in sole and exclusive control of FMI's finances.

83. At all times, Ferris and Shea stood on both sides of all the above-described transactions,

(a). on one side as PC Gear Head's respective President and CFO, who facilitated and approved the diversion of PC Gear Head's profits and loan proceeds to FMI; and

(b). and on the other side as FMI's owners, who combined PC Gear Head's and FMI's finances over Plaintiff's objections so that it would receive and benefit from the very same profits and loan proceeds Ferris was directing away from PC Gear Head.

84. Florida common law imposed on Ferris and Shea a fiduciary duty to Plaintiff to act in good faith and with fair dealing, and to act in Plaintiff's best interests in the custody and use of PC Gear Head's assets for Plaintiff's benefit.

85. At all times, Plaintiff reasonably relied on Ferris and Shea to act in good faith and with fair dealing.

86. At all times, Ferris and Shea knew that entering into all of the above-described transactions would be detrimental solely to Plaintiff, while they would benefit personally from those same transactions through their ownership of FMI.

87. Ferris and Shea breached their fiduciary duty to Plaintiff when they caused PC Gear Head to enter into multiple transactions for their personal gain, and knowing that those transactions would cause Plaintiff to lose from his share of PC Gear Head's profits.

88. Ferris and Shea breached their fiduciary duty to Plaintiff when they caused PC Gear Head to enter into multiple transactions as described above, all of which benefited only FMI, Ferris and Shea, without Plaintiff's consent, at Plaintiff's sole expense, and without providing an accounting to Plaintiff.

89. Ferris's and Shea's breach of fiduciary duty has caused Plaintiff damages as:

(a). lost profits from PC Gear Head which should have been distributed to Plaintiff, but that instead Ferris and Shea used to benefit solely themselves and FMI, while knowing that such use was opposed by Plaintiff and would be detrimental solely to Plaintiff; and

(b). lack of consideration to Plaintiff for consenting to use all of PC Gear Head's assets as security for numerous loans in the millions of dollars for FMI's, Ferris's, and Shea's sole and exclusive benefit.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter judgment finding defendants RONALD M. FERRIS, JR. and DANIEL A. SHEA liable for common law breach of fiduciary duty, award Plaintiff damages along with interest thereon, and grant such other relief as the Court deems just and proper.

**Count III - Breach of Fiduciary duty and aiding and abetting breach of fiduciary duty against FMI**

90. Plaintiff incorporates the allegations in Count I against Ferris and Count II against Ferris and Shea as if fully restated herein.

91. FMI, as PC Gear Head's controlling member, owed a fiduciary duty to Plaintiff under the LLC Act and common law.

92. FMI knew and understood that as PC Gear Head's senior executive officers, Ferris and Shea both owed a fiduciary duty to Plaintiff.

93. FMI, as PC Gear Head's controlling member, consented to and facilitated Ferris's and Shea's breach of their fiduciary duties to Plaintiff as described above for its sole financial gain by allowing and encouraging Ferris and Shea to divert PC Gear Head's profits to itself without first paying Plaintiff his share of those profits.

94. FMI, as PC Gear Head's sole controlling member, breached its fiduciary duty to

Plaintiff when it forced Plaintiff to sign consents that allowed Ferris and Shea to combine its own finances with PC Gear Head's so that it could pay itself from PC Gear Head's profits without first paying Plaintiff his share.

95. FMI, as PC Gear Head's sole controlling member, breached its fiduciary duty to Plaintiff when it forced Plaintiff to sign consents that allowed Ferris and Shea to encumber all of PC Gear Head's assets as security interests for loans solely to itself.

96. FMI, as PC Gear Head's controlling member, aided and abetted Ferris's and Shea's breach of their fiduciary duties to Plaintiff by coercing Plaintiff to sign the consents that were detrimental solely to Plaintiff, and knowingly facilitating the diversion of PC Gear Head's profits and loan proceeds for its own personal financial gain and those of Ferris and Shea, and without first paying Plaintiff his share of those profits.

97. FMI knew at all times that the above described acts by Ferris and Shea were for FMI's sole and exclusive benefit.

98. FMI knew at all times that the above described acts by Ferris and Shea would be detrimental only to Plaintiff.

99. FMI was the one and only member of PC Gear Head who benefitted from all of Ferris's and Shea's above-described acts.

100. Plaintiff has suffered damages as a result of FMI's breach of fiduciary duty and FMI's aiding and abetting of Ferris's and Shea's breach of fiduciary duty in the form of:

(a). lost profits from PC Gear Head which should have been distributed to Plaintiff, but that instead Ferris and Shea, with FMI's full knowledge, approval, and assistance, used to benefit solely themselves and FMI, while knowing that such use was opposed by Plaintiff and would be detrimental solely to Plaintiff; and



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

(b). lack of consideration to Plaintiff for consenting to use all of PC Gear Head's assets as security for numerous loans in the millions of dollars for FMI's, Ferris's, and Shea's sole and exclusive benefit.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter judgment finding defendant FERRIS MARKETING, INC. liable for common law breach of fiduciary duty and aiding and abetting breach of fiduciary duty, award Plaintiff damages along with interest thereon, and grant such other relief as the Court deems just and proper.

**Count IV - Conspiracy against FMI, Ferris, and Shea**

101. Plaintiff incorporates the allegations in Count I against Ferris, Count II against Ferris and Shea, and Count III against FMI as if fully restated herein.

102. FMI, Ferris, and Shea are parties to a civil conspiracy.

103. FMI, Ferris, and Shea conspired to do an unlawful act by lawful means by jointly coercing and forcing Plaintiff to consent to the above-described transactions, all of which were to each of their own personal and exclusive benefit and to Plaintiff's sole detriment.

104. Defendant's each owed a duty to Plaintiff to act in good faith and with fair dealing as provided by the LLC Act and Florida common law.

105. Defendant FMI committed an overt act in furtherance of the conspiracy when it exploited its majority interest in PC Gear Head to oppress and coerce Plaintiff into signing the consents for the above-described transactions.

106. Ferris and Shea each committed an overt act in furtherance of the conspiracy when they exploited the consents FMI coercively obtained from Plaintiff to redirected PC Gear Head's profits to FMI, and to use Plaintiff's share of retained earnings to secure loans whose proceeds they directed to FMI.

107. All of FMI's, Ferris's, and Shea's individual acts in furtherance of the conspiracy



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

was for each of their respective and separate personal gain.

108. Plaintiff has suffered damages as a result of FMI's, Ferris's, and Shea's conspiracy in the form of:

(a). lost profits from PC Gear Head which should have been distributed to Plaintiff, but that instead FMI, Ferris, and Shea, together and as co-conspirators, used to benefit solely themselves, while knowing that such use was opposed by Plaintiff and would be detrimental solely to Plaintiff; and

(b). lack of consideration to Plaintiff for consenting to use all of PC Gear Head's assets as security for numerous loans in the millions of dollars for FMI's, Ferris's, and Shea's sole and exclusive benefit.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter judgment finding defendants FERRIS MARKETING, INC., RONALD M. FERRIS, JR., and DANIEL A. SHEA joint and severally liable for Civil Conspiracy, award Plaintiff damages along with interest thereon, and grant such other relief as the Court deems just and proper.

**Count V - Breach of implied operating agreement against FMI**

109. Plaintiff incorporates ¶¶ 1-69 as if fully restated herein.

110. FMI, as PC Gear Head's controlling member, has breached its implied operating agreement with Plaintiff when:

(a). it allowed and approved of Ferris combining PC Gear Head's and FMI's finances without Plaintiff's knowledge or consent so PC Gear Head's profits could be redirected to itself, to its own exclusive personal benefit, and at Plaintiff's sole detriment and expense;

(b). it coerced Plaintiff to consent to the encumbrance of all of PC Gear Head's assets as guaranty of multi-million dollar loans to itself;

(c). it coerced Plaintiff to consent to an increase in retained earnings as security for

the loans to itself, which forced Plaintiff to accept reduced profit distributions; and

111. The increase in retained earnings was in breach of the implied operating agreement between Plaintiff and FMI which specifically provided that PC Gear Head would hold zero retained earnings so that they would be distributed as profits to Plaintiff and FMI, who were PC Gear Head's only members.

112. The increase in retained earnings was also in breach of the implied operating agreement between Plaintiff and FMI because it required that Plaintiff contribute his share of PC Gear Head's profits as security for the loan to FMI, even though FMI and Plaintiff agreed that Plaintiff would not have to help fund either PC Gear Head or FMI.

113. FMI also breached the implied operating agreement when it knowingly allowed and encouraged Ferris and Shea, who at all times were in exclusive control of PC Gear Head's finances, to neglect to pay Plaintiff his quarterly draws or his guaranteed payments for and since the beginning of 2016.

114. All of the above-described breaches of the implied operating agreement were without additional consideration or compensation to Plaintiff and without giving Plaintiff an accounting of the use of PC Gear Head's revenue or the loan proceeds.

115. Plaintiff has suffered damages as a result of FMI's breach of its implied operating agreement with Plaintiff, which include, without limitation, lost profits, unpaid quarterly draws, and unpaid guaranteed payments.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter judgment finding defendant FERRIS MARKETING, INC. liable for breach of implied operating agreement, award Plaintiff damages along with interest thereon, and grant such other relief as the Court deems just and proper.

**Count VI - Breach of implied covenant of good faith and fair dealing against FMI**

116. Plaintiff incorporates Count V against FMI as if fully restated herein.

117. Plaintiff and FMI are parties to a contract in the form of PC Gear Head's implied operating agreement as provided by the LLC Act.

118. The implied operating agreement gave FMI a majority ownership interest in PC Gear Head through which FMI had full power and discretion to promote its own self-interest over that of Plaintiff's.

119. FMI, through the conscious and deliberate acts described above, has contravened and frustrated Plaintiff's reasonable contractual expectations.

120. FMI's breach of the implied covenant of good faith and fair dealing deprives Plaintiff of the implied operating agreement's benefits.

121. Plaintiff has suffered damages as a result of FMI's breach of its implied covenant of good faith and fair dealing, which include, without limitation, lost profits, unpaid quarterly draws, and unpaid guaranteed payments.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter judgment finding defendant FERRIS MARKETING, INC. liable for breach of the implied covenant of good faith and fair dealing, award Plaintiff damages along with interest thereon, and grant such other relief as the Court deems just and proper.

**Count VII - Judicial dissolution of PC Gear Head against FMI as member**

122. Plaintiff incorporates ¶¶ 1-69 as if fully restated herein.

123. The LLC Act at § 605.0702 provides that a court in a proceeding by a member for judicial dissolution of a limited liability company may dissolve the company if:

(a). it is not reasonably practicable to carry on the company's activities and affairs in conformity with PC Gear Head's articles of organization and its implied operating

agreement; or

(b). the limited liability company's assets are being misappropriated or wasted, causing injury to the limited liability company, or in a proceeding by a member, causing injury to one or more of its members.

124. Ferris as PC Gear Head's manager and chief executive officer, Shea as PC Gear Head's CFO, with the support of FMI as PC Gear Head's controlling member, continue to deny Plaintiff his share of PC Gear Head's profits.

125. Additionally, in a personal meeting in Florida on or about February 2016, FMI, through Ferris its majority shareholder, told Plaintiff that it intended to shut down PC Gear Head.

126. Ferris and FMI, intentionally and in bad faith, also offered to buy Plaintiff's interest in PC Gear Head at a price that was less than what it was worth and without giving Plaintiff an accounting he could use to evaluate the offer.

127. On information and belief, Ferris, Shea, and FMI continue to divert PC Gear Head's profits to themselves, without first paying Plaintiff his share.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter a decree of dissolution pursuant to § 605.0705, and direct the winding up and liquidation of PC GEAR HEAD, LLC's activities and affairs in accordance with §§ 605.0709-605.0713, and such other relief as the Court deems just and proper.

**Count VIII - Unjust enrichment Against Ferris, Shea, and FMI**

128. Plaintiff incorporates ¶¶ 1-69 as if fully restated herein.

129. Ferris, Shea, and FMI conferred a benefit upon themselves and their business interests when they used PC Gear Head's assets and profits against Plaintiff's consent to fund FMI's operations and those of their other business interests without first paying Plaintiff his share of those profits.



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

130. Ferris, Shea, and FMI knew and appreciated the benefit they were conferring upon themselves without first paying Plaintiff his share of those profits in violation of their respective fiduciary duties.

131. The retention of those benefits by Ferris, Shea, and FMI would work a substantial inequity on Plaintiff in the form of lost profits and wasted assets.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter judgment finding defendants RONALD M. FERRIS, JR., DANIEL A. SHEA, and FERRIS MARKETING, INC. liable for unjust enrichment, award Plaintiff damages along with interest thereon, and grant such other relief as the Court deems just and proper.

**Count IX - Declaratory Judgment action under Copyright Act as to PC Gear Head**

132. Plaintiff incorporates ¶¶ 1-69 as if fully restated herein.

133. This is an action for Declaratory Judgment under the Copyright Act.

134. Plaintiff is the original author of PC Gear Head's logos, artistic packaging, artistic product design, graphic art, and other two and three-dimensional works of fine, graphic, and applied art (the "Visual Works").

135. The Visual Works are used in PC Gear Head's business as marketing material, trademarks, the visual design of PC Gear Head's products, along with other applications.

136. The Visual Works are pictorial, graphic, and sculptural works as defined by the Copyright Act at § 101.

137. The Copyright Act at § 102 confers a copyright on the Visual Works's author.

138. The author under the Copyright is either Plaintiff or PC Gear Head depending on whether the Visual Works are works made for hire as defined in the Copyright Act at § 101.

139. Plaintiff was never PC Gear Head's employee.

140. Accordingly, because there was no express written agreement between Plaintiff and



GUTIÉRREZ BERGMAN BOULRIS, PLLC
100 ALMERIA AVENUE, SUITE 340 • CORAL GABLES, FLORIDA 33134 • TEL: +1 (305) 358-5100

PC Gear Head that the Visual Works are works made for hire, Plaintiff is the exclusive owner of the copyright over the Visual Works.

141. PC Gear Head continues to use the Visual Works as trademarks and in the sale and marketing of its products without Plaintiff's permission and in contravention of his copyrights.

142. PC Gear Head's ongoing use of the Visual Works is causing Plaintiff injury in the form of unpaid licensing rights and denial of the rights to use or license the Visual Works to other entities who may profit from them.

143. There is therefore an actual controversy between Plaintiff and PC Gear Head, who have adverse interests over copyrights in the Visual Works.

WHEREFORE, Plaintiff MICHAEL CONNOR requests the Court enter a declaratory judgment that: (a) a valid copyright exists over the Visual Works; (b) Plaintiff was never PC GEAR HEAD, LLC's employee under the Copyright Act; (c) the Visual Works are not works made for hire; and (d) Plaintiff is the sole and exclusive owner of the copyright in the Visual Works.

**DEMAND FOR A JURY TRIAL**

Plaintiff demands a jury trial for all issues so triable.

Dated: December 7, 2016

Respectfully submitted,

**GUTIÉRREZ BERGMAN BOULRIS PLLC**
*Attorneys for Plaintiff*
100 Almeria Avenue, Suite 340
Coral Gables, Florida 33134
Tel: (305) 358-5100
Primary Email: jennifer.kerr@gbbpl.com
Secondary Email: eservice@gbbpl.com
/s/ *Jennifer A. Kerr*
Jennifer A. Kerr, Esq.
Florida Bar No.149624